S. E. COVER ET AL. v. H. M. McADEN ET AL.

(Filed 2 June, 1922.)

1. **Covenants—Deeds and Conveyances—Seizin—Warranty of Title—Breach of Covenant—Paramount Title.**

A covenant of seizin in a conveyance of lands is that the particular state of things, the subject thereof, exists *in præsenti*, and if untrue at the time of the delivery of the deed, it is an instant breach of the covenant, which differs from a covenant of warranty, for the latter is an assurance by the grantor of an estate that the grantee and his heirs and assigns shall enjoy without interruption by virtue of a paramount title, or that by force of a paramount title they shall not be evicted from the land or deprived of its possession; and being prospective, it is broken only by eviction, actual or constructive, under a paramount title existing at the time the conveyance was made.

2. **Covenants — Deeds and Conveyances — Warranty—Title—Breach of Warranty—Damages.**

The modern law differs from the ancient common law of England whereunder the lord, upon breach of his warranty, was required to give his vassal another *fief* of equal value, etc., and by modern interpretation the warranty of title is treated as an agreement of the warrantor to make good by compensation in money any loss directly caused by failure of the title which his deed purports to convey.

3. **Same—Notice to Covenantor—Judgments—Prima Facie Case—Paramount Title—Evidence—Proof.**

Where the covenantee of title to lands has been evicted therefrom by the owner of a paramount title, and his covenantor has not been notified to come in and defend, and has not been made a party to the action, the covenantee in his action on the warranty of title, does not make out a *prima facie* case by showing judgment and eviction, for he is required to show, in addition, that he had been evicted under a paramount title.

4. **Same—Eviction—Ouster.**

The covenantee in a deed for lands was evicted therefrom in an action by the owner of a paramount title, and his grantor, having made good his warranty by compensation, sued the covenantor in his deed to recover upon the breach of warranty therein. It was found as a fact that the defendant in the present action had been given due notice of the former action, with opportunity to defend the title, and upon the record and the facts found *it is held*, he was bound by the judgment in that action, establishing the paramount title in another at the time of the delivery of his deed to the present plaintiff.

5. **Same—Government.**

While ordinarily there must be an eviction, actual or constructive, though not necessarily under legal process, for the covenantee to bring his action upon his grantor's breach of warranty of title, it is not essential to a constructive conviction that the paramount title be formally asserted when such title is in the State or United States Government at the time of the delivery of the deed containing the warranty.

**6. Same—Possession—Trespass—Limitation of Actions.**

Where, at the time of the conveyance of lands with warranty of title, the paramount title is in the United States Government, the paramount title of the United States was such hostile assertion as amounted to a constructive eviction; and the statute of limitations began to run at the time of the delivery of the deed, C. S., 437 (2); and where neither the Government nor the parties have been in actual possession, it is not required that the covenantee or grantee in the deed enter upon the lands as a wrong-doer, and become liable to summary ejection in order to recover upon the warranty.

**7. Appeal and Error—Facts Found by Trial Judge—Covenants—Breach—Deeds and Conveyances—Judgments.**

The plaintiff's covenantee was sued by the United States Government to recover certain lands alleging paramount title by prior deeds, of which the plaintiff and defendant in the present action for breach of warranty had notice, but neither became parties; and it was found by the trial judge who the parties to the present action agreed should find the facts on the evidence, that the plaintiff and defendant were precluded by the former judgment: *Held*, upon the facts found it was not open for the defendant to contest the validity of the probates to the deeds under which the Government claims, and under which it has established its paramount title in the former action, in view of the decision of *Fibre Co. v. Cozad*, *ante*, 600.

CLARK, C. J., dissenting.

APPEAL from *Shaw, J.*, at April Term, 1922, of BUNCOMBE, the cause having been removed from CHEROKEE by consent.

Civil action to recover damages for alleged breach of warranty title. The parties waived a trial by jury, and agreed that the court, after hearing the evidence and the argument, should answer the issues. The plaintiff introduced in evidence the following:

1. A deed from Edwin B. Olmsted and wife to Levi Stevens, dated 7 February, 1868, purporting to convey about 5,000 acres of land in Cherokee County.

2. A deed for the same land from Levi Stevens and wife to the United States of America, dated 15 March, 1869.

3. An agreement between J. H. McAden, trustee, and F. P. Cover, dated 29 October, 1902, by which McAden was to sell and Cover was to buy certain tracts in Cherokee and Clay, containing several thousand acres.

4. A deed, with several, but not joint, covenants of warranty, from H. M. McAden and others to S. E. Cover and others, dated .... February, 1905, executed in pursuance of said agreement.

5. A deed, with the usual covenants of warranty, from S. E. Cover and others to the Hiawassee Lumber Company, conveying the land described in the deed from McAden to Cover. It was admitted that the

plaintiffs are the children of F. P. Cover. It is not necessary to refer particularly to the orders making additional parties, or to the special proceedings for the sale of the interest of minors.

Plaintiffs introduced, also, a judgment of the District Court of the United States for the Western District of North Carolina, rendered at March Term, 1919, in an action entitled *"United States v. Hiawassee Lumber Company,"* adjudging that the plaintiff in that action was the owner of the land conveyed in the Olmsted and Stevens deeds. This is a part of the land conveyed by McAden and others to the Covers, and by the Covers to the Hiawassee Lumber Company.

The plaintiffs alleged that the United States was seized in fee of the land described in grant No. 3110 at the date of the deed from McAden and others to the Covers, and that the makers had no title to convey, and that after the District Court adjudged the United States to be the owner of this land, the plaintiffs paid to the Hiawassee Lumber Company the amount received as the purchase price, with interest at 6 per cent from date of receipt to date of payment, namely 22 May, 1919. The plaintiffs have sued to recover $5,922, with interest. His Honor answered the issues, finding that defendants, except the minors, covenanted to warrant and defend the title to the lands described in the complaint; that title vested in the United States by virtue of the Olmsted and Stevens deeds; that the plaintiffs and defendants had notice of the action of the United States against Hiawassee Lumber Company; that plaintiffs accounted to the Hiawassee Lumber Company for the loss caused by its breach of warranty; that the judgment of the District Court and plaintiffs' settlement with Hiawassee Lumber Company constituted an ouster, and assessed certain damages. His Honor answered the seventh issue as follows:

"Is the cause of action of the plaintiffs barred by the statute of limitations, as alleged in the answer? Answer: Yes, the court being of the opinion that plaintiffs are estopped by reason of the judgment in United States Circuit Court in the case of *United States v. Hiawassee Lumber Company* to deny that their cause of action arose upon the execution of the deed to them by the defendants in 1905; and the court further is of the opinion, and so holds, that under the judgment above mentioned the title to the lands in controversy, insofar as plaintiffs and defendants are concerned, was in the United States, and the plaintiffs and defendants having neither of them been in the actual possession of any part of said property that the plaintiffs' cause of action arose immediately upon the execution and delivery of the said deed to them by the defendants."

Judgment; all parties appealed.

*Martin, Rollins & Wright for plaintiffs.*
*Tillett & Guthrie for defendants.*

Adams, J.   The United States acquired its title on 15 March, 1869. In February, 1905, McAden and his cotenants executed their deed to the Covers, and on 17 May, 1906, the Covers made a conveyance to the Hiawassee Lumber Company, reserving certain timber and minerals, with right of entry for purposes designated in the deed.   On 19 August, 1910, the United States brought suit against the Hiawassee Lumber Company in the District Court for the Western District of North Carolina, and at the March Term, 1919, recovered a final judgment declaring the plaintiff in that action to be the owner of the land in controversy. In answer to the fourth issue his Honor concluded that the District Court had adjudged the United States to be the owner of 2,632 acres of the land embraced in the deed executed to the Covers by McAden and his cotenants.   This land was included, also, in the deed from the Covers to the Hiawassee Lumber Company.   After rendition of the final judgment in the District Court, the plaintiffs refunded to the Hiawassee Lumber Company the consideration received by them and their predecessors, with interest from the date of payment, and on 16 December, 1919, instituted the present action to recover of the defendants the sum of $5,922, the amount refunded, with interest thereon from 1 March, 1905, as damages for the defendants' alleged breach of warranty. Among other defenses, the defendants pleaded the statute of limitations in bar of the plaintiffs' recovery; and this plea necessarily involves the preliminary question whether the plaintiffs' alleged cause of action is defeated by lapse of time.

In view of the plaintiffs' contention, it may be advisable to note the distinction between a covenant of seizin and a covenant of warranty. The former is a covenant *in præsenti,* or a covenant that a particular state of things exists when the deed is delivered—*juris et seisinæ conjunctio*—and if it does not exist the delivery of the deed containing such a covenant causes an instant breach.   A covenant of warranty is prospective.   It is an agreement or assurance by the grantor of an estate that the grantee and his heirs and assigns shall enjoy it without interruption by virtue of a paramount title, or that they shall not by force of a paramount title be evicted from the land or deprived of its possession. Rawle on Covenants, sec. 205; Burdick on Real Prop., sec. 301; *Wiggins v. Pender,* 132 N. C., 634.   This distinction is further observable in the conditions or circumstances that usually characterize the breach of each covenant.   If the grantor is not seized, or if an encumbrance exists, the covenant of seizin is broken immediately upon the execution of the deed; but generally speaking, a covenant of warranty, being prospective in its nature, is broken only by eviction, actual or constructive, under a paramount title existing at the time the conveyance is made.   Burdick, *supra,* 814; *Wiggins v. Pender, supra; Price v. Deal,* 90 N. C., 290; *Coble v.*

*Wellborn,* 13 N. C., 388; *Britton v. Ruffin,* 123 N. C., 67; *Griffin v. Thomas,* 128 N. C., 310; *Cedar Works v. Lumber Co.,* 161 N. C., 614.

We must, therefore, inquire whether at the time the plaintiffs and the defendants executed their respective deeds there was a paramount title in the United States, and if so, whether the Hiawassee Lumber Company, after vouching in the plaintiffs, was actually or constructively evicted from any part of the purchased premises by virtue of such title. Although there is no contention that the judgment of the District Court does not conclude the Hiawassee Lumber Company, it is necessary to decide whether it likewise concludes the plaintiffs. The answer depends in part on the question of notice and the relation existing between the plaintiffs and the Hiawassee Lumber Company at the time the judgment was rendered. At common law the lord, when vouched in or notified, was required to appear and protect his vassal in the enjoyment of his fief, and, failing to do so, to give to the vassal another fief of equal value. If the warrantor had no lands or tenements, and if there was neither voucher nor writ of *warrantia chartæ* (warranty of deed or title), there could be no recovery in value; but in the modern law a covenant of warranty is treated as an agreement of the warrantor to make good by compensation in money any loss directly caused by failure of the title which his deed purports to convey. It is not always essential to the grantee's right of action on the covenant that he should give his covenantor notice to come in and defend the title. But if no notice is given, the covenantee, in his suit against the covenantor for breach of warranty, does not make out a *prima facie* case by showing judgment and eviction; he must show, in addition, that he was evicted under a paramount title, unless the covenantor was a party to the suit that brought about the eviction. 15 C. J., 1265, sec. 97. In *Jones v. Balsley,* 154 N. C., 68, *Walker, J.,* approved the doctrine stated in *Carroll v. Nodine,* 41 Oregon, 412, to this effect: "Before an indemnitor can be expected to defend, he must have reasonable notice of the pendency of the suit or action by which he is to be bound, and afforded an opportunity to participate in or interpose such defense as he may desire; and it is only by complying with such conditions that the party to be indemnified can estop the indemnitor to controvert the matter anew in an action against him upon the indemnity contract or obligation." True, in *Martin v. Cowles,* 19 N. C., 101, approved in *Wilder v. Ireland,* 53 N. C., 85, it was held that a judgment in ejectment against the vendee is no evidence of a defect in the title of the vendor, when the latter is sued upon his covenant by the former; but *Justice Walker* observed that these cases were decided under the system of pleading, practice, and procedure prevailing at common law, when the ejectment suit was regarded with respect to the covenantor as *res inter alios acta,* and he could not for that reason

become a party to it. The learned justice remarks, also, that the great weight of authority in England and in this country is to the effect that it is sufficient to conclude the vendor by the judgment if he is made constructively a party by substantial notice to come in and defend his title, and that it is not necessary that he be actually a party to the suit. *Jones v. Balsley, supra,* 69. Answering the third issue, his Honor found as a fact that both the plaintiffs and the defendants had been given due notice of the action prosecuted by the United States against the Hiawassee Lumber Company and an opportunity to defend the title, and that they were bound by the judgment in that action. We hold, therefore, that the plaintiffs have shown, for the present purpose, an outstanding paramount title to the lands recovered against the Hiawassee Lumber Company in the District Court.

We are next concerned with the question whether the plaintiffs have shown an eviction under this title. In *Shankle v. Ingram,* 133 N. C., 255, the plaintiff alleged that the defendant had conveyed to him 245 acres of land, with covenants of warranty; that the defendant had previously conveyed 41.8 acres of this land to Jesse Reynolds; that Reynolds was in possession of his tract, holding adversely at the time the plaintiff acquired his deed. Upon plaintiff's suit for breach of warranty, it was said that since Reynolds held adverse possession under a good title at the time the plaintiff received his deed, such adverse possession was equivalent to an ouster. If the plaintiff had entered upon the possession of Reynolds he would have committed a trespass; and in *Coble v. Wellborn, supra,* Ruffin, J., said: "No man is compelled to be a trespasser, and, therefore, when it has been judicially ascertained that another is in better title, it follows that he is kept out; which is equal to being turned out." *Grist v. Hodges,* 14 N. C., 200; *Wiggins v. Pender, supra.* The immediate question, then, is this: At the date of the deed executed by the plaintiffs to the Hiawassee Lumber Company, were the circumstances under which the United States held title tantamount to a constructive eviction of the plaintiffs' grantee? In effect, the final judgment of the District Court was an adjudication that the United States acquired its title under the Stevens deed before the execution of the McAden deed or plaintiffs' conveyance to the Hiawassee Lumber Company. It is admitted that none of the grantors or grantees in the deed from the McAdens to the Covers ever had actual possession of the land therein described, and that the Hiawassee Lumber Company never had actual possession of the land embraced in its deed from the Covers. Nor was the United States in the actual occupation. Ordinarily the mere existence of an outstanding paramount title to land will not authorize a recovery by the grantee in an action for breach of the covenant. There must be an eviction, actual or constructive, but not

necessarily under legal process. 15 C. J., 1288, sec. 157 (b); *Coble v. Wellborn, supra; Price v. Deal, supra; Hodges v. Latham,* 98 N. C., 240; *Britton v. Ruffin, supra; Ravenal v. Ingram,* 131 N. C., 549. In other words, to warrant recovery there must be some hostile assertion of the adverse title, unless the superior title is in the State. 15 C. J., 1288, sec. 157. But the authorities hold that where the paramount title is in the State or the United States it is not essential to a constructive eviction that such title be formally asserted. "A grantee by a warranty deed executed by a private person to lands owned by the United States cannot take possession without becoming a wrongdoer, and is not required to take or attempt to take possession, and his right of action accrues immediately to recover for a breach of warranty not dependent on eviction or any future event." 7 R. C. L., 1151, sec. 63. In *Crawford County Bank v. Baker* (Ark.), 130 S. W. R., 557, *McCulloch, C. J.,* said: "It is well settled in this State and elsewhere that when the title to land is in the State or the United States, that of itself is such a hostile assertion of the paramount title as will amount to a constructive eviction, sufficient to authorize a purchaser to maintain an action against his vendor for breach of the covenants of warranty." *Seldon v. Dudley Jones Co.,* 85 S. W. R., 778; *Dillahunty v. Ry.,* 59 Ark., 629; Rawle on Covenants, sec. 140; 2 Tiffany on Real Property, 1701 (n); Compiled Sts., sec. 4980. In *Pevey v. Jones,* 71 Miss., 647, *Campbell, C. J.,* discussing the question, said: "As to the land belonging to the United States, the covenant of warranty was broken the instant it was made, and a right of action on it then accrued, and was barred when this action was commenced. The true doctrine is that the United States are always seized of their lands, and cannot be disseized as private owners may be; that land belonging to the United States cannot lawfully be the subject of sale and conveyance by individuals, so as to confer any right; that a grantee of such land by another than the United States cannot take possession without becoming a wrongdoer, and liable to summary ejection; and, therefore, that a covenant of warranty, in a conveyance of land belonging to the United States, must be viewed differently from one where the ownership is by a private person; that the grantee is not required to take possession, or to attempt to get it, and that a right of action immediately accrues to recover for a breach of the warranty, not dependent on any future event, but fixed by the fact of ownership of the land by the Government. In this case the grantee acquired nothing whatever as to the land owned by the United States; and, by virtue of the transaction, his vendor, on receipt of the purchase money, thereby at once became liable to him for money received to his use. We are not aware of any direct authority for this view, but it seems to result necessarily from what is well settled, and we do not hesitate to make a precedent so fully supported by reason."

Applying these principles, we conclude that neither the plaintiffs nor the defendants had title to the land when their respective deeds were executed, that the paramount title of the United States constituted such hostile assertion as amounted to a constructive eviction, and that the plaintiffs' alleged cause of action accrued at the time of the ouster. Since the summons was issued on 16 December, 1919, it follows that the plaintiffs' action is barred by the statute of limitations. C. S., 437 (2).

In view of the decision rendered at this term in *Fibre Co. v. Cozad, ante,* 600, we deem it proper to remark that we are not inadvertent to the probate of the Olmsted and Stevens deeds. While the probate of these deeds may be subject to the criticism set forth in that decision, we need not consider the question here, for his Honor concluded from the evidence that the plaintiffs and the defendants were bound by the judgment of the District Court. From this finding it results that the parties to this action are precluded from contesting the validity of the probate.

The judgment of his Honor is

Affirmed.

CLARK, C. J., dissenting: J. H. McAden, trustee under the will of R. Y. McAden, on 29 October, 1902, entered into a contract with F. P. Cover to convey certain tracts of land in Cherokee and Clay counties. Before the deed was executed, both parties having died, under a proceeding instituted in Cherokee, judgment was entered decreeing that defendants herein convey to S. E. Cover and others, heirs of F. P. Cover, the plaintiffs herein, the said land at the price agreed upon of $2.25 per acre (which was paid 1 March, 1905), and the defendants, in their deed to plaintiffs, severally but not jointly, covenanted that the grantors were seized in fee of said land, have good right to convey the same in fee, that there were no encumbrances thereon, and that they would "warrant and defend the title against the lawful claims of all persons whatsoever."

On 17 May, 1906, the heirs of F. P. Cover, grantees in the deed above referred to, and the plaintiffs in this action, conveyed the said land, with exactly the same covenants, to the Hiawassee Lumber Company. At the date of the aforesaid mentioned deed neither of the parties were in actual possession of the lands herein referred to. On 19 August, 1910, the United States brought action in the Circuit Court of the United States for the recovery of a certain part of said land, and the case was ultimately carried to the Supreme Court of the United States by appeal, and a final judgment in favor of the United States was entered 11 March, 1919, which adjudged that the United States recover of the said · Hiawassee Lumber Company the 2,632 acres in controversy, and which had been conveyed by the defendants to the plaintiff. On 17 March, 1919, the Hiawassee Lumber Company demanded of the plaintiffs a

return to it, with interest, of the amount of money which it had paid to the plaintiffs for the land.

On 10 April, 1919, the plaintiffs demanded of the defendants the repayment of the sum of $2.25 per acre, with interest from the date of the payment thereof, as purchase money, which had been paid by the plaintiff to the defendant for the said 2,632 acres. This demand was repeated in a letter of 25 April, 1919. On 6 May, 1919, the defendants acknowledged receipt of these two letters, and on 8 May they were again called upon for payment, to which their attorney made reply on 15 May, that the plaintiffs had no right to claim anything from the defendants until the plaintiffs had paid the Hiawassee Lumber Company its loss. Thereupon, on 23 May, 1919, the plaintiffs paid to the Hiawassee Lumber Company said sum and took their full receipt therefor with interest. Notice of such payment was given to the defendants on 23 May, 1919, and demand made that they reimburse the plaintiffs. The defendants refused to reimburse the plaintiffs for the purchase money paid by them, and this action was brought 11 December, 1919. It was admitted on the trial that the plaintiffs in this action had succeeded to all the rights of the heirs of F. P. Cover to recover of the defendants on their warranty in the deed of February, 1905, and that the lands recovered by the United States in the case against the Hiawassee Lumber Company were a portion of the lands conveyed by the defendants to the plaintiffs by above deed of February, 1905, and that neither the grantors in the deed from the McAdens to the Covers and none of the grantees in said deed ever had actual possession of the lands covered by the deed.

The sole defense was the statute of limitations. The Hiawassee Lumber Company, grantee of the plaintiffs, having lost the land in question under a decree of the United States Supreme Court, and the plaintiffs having reimbursed said lumber company for said loss under their warranty, and neither the defendants nor plaintiffs having been in possession at the time of the conveyance in 1905, it would seem unnecessary to discuss the liability of the defendants upon the warranty set out in the deed from them to the plaintiffs that "they had a good right to convey the land in fee, that there was no encumbrance thereon, and they would warrant and defend the title to their grantees," and that in justice and in equity the defendants should be decreed to make good the purchase money they received in 1905 of $2.25 per acre on the 2,632 acres, and interest.

The statute of limitations is based upon the equitable principle that parties who have slept upon their rights are not entitled to recover, but in this case there has been no delay.

The plaintiffs had no notice of any defect in the title, and thought themselves secure, and in good faith relied upon the warranty given

by the defendants. There was nothing to put them on guard, neither party was in possession, and there was no eviction until the recovery of the land by the United States. The defendants then refused to pay until the plaintiffs had reimbursed the lumber company, and after this was done, on demand of repayment, the defendants refused, and this action was promptly instituted. The defendants having conveyed to the plaintiffs property to which they had no title, and having received money therefor, should reimburse the plaintiffs. This action was brought within less than a year after their *mesne* grantee was evicted by the true owner of the title.

There could certainly be no action on a warranty to defend until there was an eviction, or some act which amounted to an eviction. In this case there was also a covenant of seizin at the time the deed was made, and under some authorities the plaintiff would have been barred in a suit solely on such covenant, but in this case the action is brought on the covenants of warranty and for quiet enjoyment on which an action could not arise until there was an eviction or disturbance of the plaintiffs or their grantee in their right to possess the land. This occurred only after the judgment rendered against the Hiawassee Lumber Company of eviction from the lands, and it was adjudged that the title was in the United States. The statute of limitations, therefore, did not begin to run until the entry of that judgment.

In 15 Corpus Juris., 1298 (sec. 187), the doctrine is thus stated: "The right of action for a breach of covenant accrues at the time of the breach, and the statute begins to run from that time and not from the time of execution of the covenant," citing a large number of authorities from many states and countries.

In 7 R. C. L., 1186, the same doctrine is thus stated: "It is well settled that the statute of limitations begins to run against an action for breach of warranty only from the time of actual or constructive eviction. Where, however, a superior title is outstanding in the third person, at the time of the execution of the warranty deed, the covenants of the deed are broken when that title is actually asserted and the covenantee is obliged to surrender possession so that the statute of limitations commences then to run rather than from the date of the delivery of the deed."

The Hiawassee Lumber Company was obliged to yield to the title of the United States by the judgment of the Court in 1919, and immediately the right of action against the defendants arose and the statute of limitation then began to run, and not before. "In an action for breach of warranty, the question of action does not arise until there is an ouster." *Mizzell v. Ruffin,* 118 N. C., 69.

In *Wiggins v. Pender,* 132 N. C., 640, this Court said: "The plaintiffs' cause of action is not barred by the statute of limitations. It did not occur until there was an eviction which took place in 1901, and the statute does not commence to run until the right of action has accrued."

In 13 Anno. Cas., 700, the law is thus stated: "It is well settled that the statute of limitations begins to run against an action, brought for a breach of warranty, only from the time of actual or constructive eviction," citing a large number of cases, among them *Flowers v. Foreman,* 23 Howard, 183; *Mizzell v. Ruffin, supra; Wiggins v. Pender, supra,* and *Shankle v. Ingram,* 133 N. C., 254.

In *Flowers v. Foreman, supra,* the United States Supreme Court said: "The cause of action accrues on a covenant of warranty when a judgment of eviction is rendered or when the defendant in that suit paid the money to satisfy the successful party in that suit."

The authorities to the above effect are so numerous that we will not add any more, but will merely advert to the fact that if, as the defendants contend, the possession of lands belonging to the Government confers no right upon the possessor, no lapse of time should confer immunity upon a warrantor. Any other view would certainly work a great injustice in all such cases. It is difficult to see how the plaintiffs had a cause of action on the warranty to defend the title until the Government made its claim. Undoubtedly, if the plaintiffs had brought suit on the warranty to defend title before the Government made claim to the land, they would have failed in their action because their right to possession under the deed from the defendants had not been disturbed. All parties assumed that the lands belonged to the defendants, who warranted title and covenanted that they would defend it, and the title was not questioned by anybody until the Government brought suit in 1910.

The defendants should make good to the plaintiffs the money which the defendants received for the land, with interest, when they received notice that their grantees, the plaintiffs, had been compelled to make good under the same warranty to the lumber company, who had been evicted by the judgment of the Court in favor of the United States. It seems that the defendants themselves were of this opinion, for when payment was first demanded, their only objection, then, was that the plaintiffs had not then paid in full the Hiawassee Lumber Company, their own grantee.

The right of the plaintiffs to recover the purchase money paid by them to the defendants rests upon the soundest principles of justice which cannot be defeated by reference to minute technicalities in the complicated procedure under the Feudal System so long ago (1660) happily abolished by the statute, 12 Charles II.