BRINKLEY & LASSITER v. NORFOLK SOUTHERN RAILROAD
COMPANY AND TOWN OF GREENVILLE.

(Filed 17 March, 1915.)

1. Appeal and Error—Unanswered Questions.

The exception that witness for appellant was not permitted by the court to answer his question cannot be considered on appeal unless it is in some way made to appear of record that the answer would have been in appellant's favor.

2. Surface Water — Drainage — Negligence—Evidence—Appeal and Error—Harmless Error.

Where damages to goods stored in a warehouse located in a basement, in a damp soggy place, are sought in an action alleging it was caused by a wrongful diversion of the flow of surface waters, it cannot be considered for error on appeal that a witness, not having qualified as an expert, was permitted to testify that the water would rise in a basement of this character unless built with concrete floor and walls, as such would naturally be inferred by an intelligent jury from their own knowledge of such

conditions, and especially where the question was undisputed in the evidence of both parties at the trial.

3. **Appeal and Error—Evidence—Answer to Questions—Harmless Error.**

An exception to an answer of a witness that he did not know the information sought to be elicited by the question, cannot be considered as prejudicial, and will not be considered as error on appeal.

4. **Surface Waters—Drainage—Negligence—Evidence—City Engineers—Due Care.**

In an action against a city and a *quasi*-public corporation for damages to goods from the rising of water in a basement wherein they were stored, alleged to have been caused by an improper or insufficient sewer constructed by the defendant, etc., to carry the water off, with evidence that the defendant city had put in a 24-inch pipe, under a street, and the defendant corporation had continued the same drain across its property below, the minutes of the defendant city, showing the appointment of engineers to construct the drainage of the town, are competent to be shown upon the question of the exercise of due care.

5. **Surface Waters — Drainage—Negligence—Evidence—Ordinary Rainfall—Appeal and Error—Harmless Error.**

Where damages are sought upon the grounds that they were caused to plaintiff's goods by water rising in his cellar, occasioned by insufficient drainage constructed by the defendant and heavy rains, it cannot prejudice the plaintiff that a witness was permitted to testify that the drainage was sufficient to carry off the water in an ordinary rainfall, when that fact is not controverted on the trial.

6. **Surface Waters — Drainage — Ordinary Care — Negligence — Anticipated Rainfalls—Trials—Instructions.**

In this action against a city and a *quasi*-public corporation to recover damages to plaintiff's property alleged to have been caused by the negligence of the defendants in providing an insufficient drain for carrying the water off from his lands from rainstorms which should reasonably have been anticipated in that locality, it is held that the instructions of the court to the jury correctly imposed upon the defendants the duty of exercising ordinary care and correctly charged upon the question of their liability for their negligence in not doing so. The charge is approved.

APPEAL by plaintiffs from *Daniels, J.,* at March Term, 1914, of PITT.

Action in which the plaintiffs are asking for damages from the defendant railroad company and the town of Greenville for building a culvert and closing a ditch which ran through their land and across Dickinson Avenue immediately under where the railroad crosses. In putting in the improvements, the defendants placed two 24-inch drain tile parallel in said ditch, and built a culvert between 4 and 6 feet high at the opening of said drain tile in the lower edge of plaintiffs' property. Plaintiffs claim damage from the ponding of water by reason of the insufficient opening to carry off the water coming down said ditch, which ran along parallel and near to the walls of their brick warehouse, alleging that the

water caused the walls of said building to give way and crack, and soaked the basement used for ordering and grading tobacco. This was denied by the defendants.

The evidence tended to show that many years before this place at the street was a low flat, and the town constructed a wooden drain at the street crossing of the drain 18 inches wide; that subsequently one line of 24-inch pipe was put in under the street, and it was raised some; that thereafter the town authorities paved Dickinson Avenue and put in two lines of 24-inch pipe and carried this drain across the street, and the railroad company had continued the same drains across its property below Dickinson Avenue for about 30 feet. The plaintiffs built their buildings on the ditch and did not cement the basement, and complain because the water rose in the basement.

The jury returned the following verdict:

1. Has the plaintiffs' property been damaged, as alleged in the complaint, by the negligence of the defendant Norfolk Southern Railroad Company? Answer: "No."

Has the plaintiffs' property been damaged, as alleged in the complaint, by the negligence of the defendant the town of Greenville? Answer: "No."

Judgment was entered upon the verdict in favor of the defendants, and plaintiffs appealed, assigning the following errors:

1. In that the court committed an error in permitting the witness to answer the question as to whether there would have been any ponding in 1910 if the drainage had been properly put there.

Q. Mr. Moore called attention to some rains in 1910, and asked you about the ponding of water then. Would there have been any ponding if the drainage had been properly put in there?

2. In that the court permitted the witness to answer the question as to whether any basement could be depended upon to be free from danger of seepage that does not have concrete floor and wall in a damp, soggy place.

3. In that the court permitted the defendant's counsel to ask T. J. Smith, who was not qualified as an expert, or by practical experience, to answer the following:

Q. From your knowledge and experience of drainways and the area and territory naturally drained into this drainway, I ask you if that drainway is sufficient to carry that water off with reasonable rapidity?

4. In that the court permitted defendant's witness C. H. Harvey to answer the following question, although no expert, or qualified as an expert:

Q. I ask you, from your experience, if in heavy rainy seasons water will rise in a basement that is located in low, springy land that has no

concrete floor and concrete side wall? A. Yes, sir; I have seen water rise in basements. I believe concrete is used as a preventative to keep basements dry.

5. In that the court permitted the introduction of the minutes of the board of aldermen, without showing the purpose for which introduced, as having no bearing on the question at issue before jury.

6. In permitting witness E. H. Evans to answer the question set forth in the record, page __, as to the sufficiency of the opening for drainage, without expert knowledge or experience, to answer question as to proper drainage, basing his opinion on what he had seen.

7. Court's permitting W. H. Dail, Jr., to answer a question as to the water in a previous basement, without showing that conditions were the same, or that he was familiar with conditions now.

8. The plaintiffs, appellants, rely on the exceptions 9, 10, 11, 12, 13, 14, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, and 28.

*S. J. Everett, Harry Skinner, and I. G. Cooper for plaintiff.*
*L. I. Moore for defendant N. S. R. R. Co.*
*Jarvis & Wooten and F. G. James & Son for defendant town.*

ALLEN, J. The first assignment of error cannot be sustained, because the record fails to disclose what would have been the answer of the witness or what the plaintiff expected to prove. *Lumber Co. v. Childerhose,* 167 N. C., 40. The evidence both for the plaintiff and the defendants was to the effect that the ponding of water referred to in 1910 was the result of an extraordinary rainfall, and we cannot infer from the evidence what the opinion of the witness as to its effect if the drainage had been properly put in, and cannot see that the answer would have been favorable to the plaintiff.

The second and fourth assignments of error present substantially the same question, and we see no reversible error in permitting the witness to answer the questions propounded.

In the first place, in the absence of any evidence, an intelligent jury would know that a basement in a damp soggy place, without a concrete floor, would not be free from the danger of seepage. And again, the record shows that there was really no dispute as to this fact.

The plaintiff testified: "The rear end of our warehouse was built on soft land. The only way that water could come into our basement had to come by seepage or going under the walls and rising up. We have no concrete walls in our basement," and a witness for the plaintiff, S. D. Pruitt, who was manager for the warehouse company, said: "Our boiler-room is built right down close to the edge of this run. If you build a house on springy land and don't put in a concrete floor, the water will rise in it."

The third assignment of error is without merit, because if the question was objectionable, the answer of the witness could not affect the controversy. He said in reply to the question, "I don't know who put in the second pipe, whether the railroad or town."

The minutes of the board of aldermen, the subject of the fifth assignment, showing the appointment of engineers to construct the drainage for the town of Greenville, was competent upon the question of the exercise of due care.

The questions asked E. H. Evans, referred to in the sixth assignment of error, and the answers thereto, are as follows:

Q. Knowing, as you do, that ditch, and knowing the size of that tile, and knowing the usual rainfall in this community, have you an opinion satisfactory to yourself as to whether that tile is sufficient to carry off that water that comes down that ditch in ordinary rainfall? A. "I should say it was."

The fact embodied in this question and answer was not in dispute, as there is no evidence upon the part of the plaintiff that the plaintiff was injured by ordinary rains or that the pipes would not carry off such rains.

The civil engineer introduced by the plaintiff testified: "I think the drainways in question are sufficient to take off the water in ordinary times."

D. S. Spain, a witness for the plaintiff, said: "Whenever the ditch was full of water it was after a heavy rain; I never saw that condition after an ordinary rain."

The seventh assignment of error is not supported by the record, which shows that before the witness was permitted to answer, the court asked him about the construction of the cellar, and that he said: "It was very much the same as now."

We might decline to consider the exceptions in the eighth assignment of error upon the ground that they do not conform to our rules, but we have examined the entire charge and the exceptions to it taken by the plaintiff, and find nothing of which he can justly complain.

His Honor charged the jury, among other things, as follows:

"What duty did the town of Greenville and the railroad company owe the plaintiff? The town of Greenville had the right to, and it was the duty of its board of aldermen to exercise their discretion in grading and improving the streets of the town, and in doing that they improved this avenue and raised the surface of the street, placing drains under it for the purpose of carrying away the water which naturally came across it from the land of the plaintiffs, and the duty they owed plaintiffs under these circumstances was to provide the streets with sufficient drains to carry off said water without injury to the plaintiffs.

"It was the duty of the town of Greenville to exercise ordinary and reasonable care in the improvement of its streets to provide for such rains as could with the exercise of ordinary care be foreseen, taking into consideration the weather conditions in the community in which the work was done. The plaintiffs allege that the defendant town of Greenville failed to exercise this care, and was thereby guilty of negligence, and that the railroad company participated in this, and there was evidence tending to show that the railroad company took up the first drain pipe across Dickinson Avenue and put that down again, and still another, and that a bulkhead was placed against plaintiffs' property through which these drain pipes ran. The allegation is that these two pipes are not sufficient provision against ordinary rainfalls, that could be foreseen with the exercise of ordinary care. The defendant town of Greenville can't be held liable because it failed to make provision against extraordinary rainfalls, a cloudburst, or unusual or unexpected rain which could not be foreseen in the exercise of ordinary care by a man of reasonable prudence, and the same rule applies to defendant railroad. You can only answer this issue as to the defendants if they failed to exercise reasonable care to provide against the ordinary conditions which a man of reasonable prudence could have foreseen were likely to happen in reference to this drainway. They only fail in duty when they fail to exercise ordinary care and prudence.

"The law holds the city liable where they fail to exercise that care and where their failure to do so is the cause of injury such as is alleged in this case. You will note that it must be a breach of a duty that the defendants owed to the plaintiffs that justifies the finding upon these first two issues, and (the only duty that the defendants owed the plaintiffs in this case was to exercise ordinary care to provide such drains as to remove without injury to plaintiffs such surface water as from experience and knowledge of the past might be reasonably anticipated to fall and to be ponded against. They are not required to provide against such extraordinary and excessive rains as could not be reasonably foreseen and provided against."

This imposed upon the defendants the duty of exercising ordinary care and made them liable for negligence, which is in accordance with our authorities. *Dorsey v. Henderson,* 148 N. C., 423; *Hoyle v. Hickory,* 164 N. C., 81.

We find no error upon the record.

No error.